UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

UNITED STATES OF AMERICA,

      Plaintiff,

v.

APPROXIMATELY $63,804.37 FROM BANK OF AMERICA ACCOUNT NUMBER 898101766484 SEIZED ON OR ABOUT JULY 21, 2021,

APPROXIMATELY $11,740 SEIZED FROM A RESIDENCE IN BOCA RATON, FLORIDA, ON OR ABOUT JULY 21, 2021, and

APPROXIMATELY $99,980 SEIZED ON OR ABOUT JULY 22, 2021.

      Defendants *In Rem*.
_____/

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

      Plaintiff, the United States of America (the "United States"), by and through its undersigned counsel, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

**I.    NATURE OF THE ACTION**

    1.    This is a Verified Complaint for Forfeiture *in rem*, pursuant to 18 U.S.C. § 981(a)(1)(A) and the procedures set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the Federal Rules of Civil Procedure, to forfeit seized U.S. currency and funds, more fully described as:

      (i)    All funds previously on deposit in Bank of America account number 898101766484 ("BoA account"), approximately $63,804.37 seized on or about

July 21, 2021;

(ii) Approximately $11,740 in U.S. currency seized from a residence in Boca Raton, Florida, on or about July 21, 2021; and

(iii) Approximately $99,980 in U.S. currency seized on or about July 22, 2021.

(Collectively, the "Defendant Assets").

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this subject matter. *See* 28 U.S.C. §§ 1345, 1355(a); 18 U.S.C. § 981(a)(1).

3. This Court has *in rem* jurisdiction over the Defendant Assets. *See* 28 U.S.C. §§ 1345, 1355(a).

4. Venue for this action is proper in this District because acts or omissions giving rise to the forfeiture occurred in the Southern District of Florida, and because this is the same District where the Defendant currency was seized, and where the related seizure warrant was sought. *See* 28 U.S.C. § 1355(b)(1), 1395; 18 U.S.C. § 981(h).

## III. FACTUAL ALLEGATIONS

5. Individual 1 and his/her spouse, Individual 2, are Brazilian citizens residing in Boca Raton, Florida (the "Residence").

6. Individual 1 and Individual 2 opened and controlled bank accounts in their name and in the name of their companies, Company 1 and Company 2 (the "Companies").

7. The following accounts were held by Individual 1, Individual 2, or the Companies:

  i. Individual 1 – TD Bank account;

  ii. Individual 2 – TD Bank account;

  iii. Company 2 – TD Bank account;

   iv. Company 2– JP Morgan Chase account;

   v. Company 1 – JP Morgan Chase account; and

   vi. Company 1 –BoA account.

8. Company 1 was incorporated in the State of Florida in or around July 2019, until its administrative closure in September 2022. Individual 1 and Individual 2 were the listed corporate officers for Company 1.  In this complaint, all dates, times, and amounts are approximate unless stated otherwise.

9. Company 1's address was the Residence.

10. Company 1 was created to provide catering services, according to the Florida Division of Corporations' database.

11. Company 1's BoA account identified the Residence as the mailing address.

12. Individual 1 is the sole signatory for Company 1's BoA account.

13. Company 2 was incorporated in the State of Florida in or around December 2014. Individual 1 and Individual 2 are the listed corporate officers for this business.

14. Company 2's address is the Residence.

15. Neither the State of Florida nor federal authorities have records of Individual 1, Individual 2, Company 1, or Company 2 registered as money transmitting businesses.

16. Transaction activity in the Companies' accounts, including Company 1's BoA account, was inconsistent with legitimate business. Outgoing transaction activity was inconsistent with actual business operations as such activity did not include payroll, any obvious business expenses, or ongoing overhead.

17. Bank records show deposits into the Companies' accounts, including Company 1's BoA account, made by unknown individuals at ATMs in various locations out of state, many on

the same day.

18. From approximately May 2018 to March 2021, the accounts held by Individual 1, Individual 2, and the Companies received over $13.3 million in cash deposits:

| CASH INFLOWS TO CORTEZ ACCOUNTS | | |
|---|---|---|
| Account Name | Total Received | Date Range |
| Individual 1 – TD Bank | $1,253,167 | 05/2018 to 04/2019 |
| Individual 2– TD Bank | $128,640 | 09/2018 to 04/2019 |
| Company 2 – TD Bank | $1,473,084 | 09/2018 to 04/2019 |
| Company 2 – JPMC | $222,652 | 07/2019 to 05/2020 |
| Company 1 - JPMC | $4,301,258 | 09/2019 to 05/2020 |
| Company 1 – B of A | $5,979,208 | 09/2019 to 03/2021 |
| *Total* | *$13,358,009* | |

19. From approximately February 2021 to July 2021, law enforcement officials conducted surveillance at the Residence. Surveillance did not observe a catering business or other legitimate business activity occurring at the Residence. Neither Individual 1 nor Individual 2 were observed going to an office or other workplace.

20. Individual 1 frequently left the Residence to go to banks. Bank records include video images of Individual 1 making deposits at various ATMs and banks in South Florida. Law enforcement observed Individual 1 depositing cash at various ATMs.

21. Company 1's BoA account received substantial cash deposits each month and made substantial outgoing transfers. Between the approximate dates of September 4, 2019, and March 31, 2021, Company 1's BoA account:

    i.    Received $7,709,030 in deposits;

      ii.     Received $5,117,584.64 in ATM cash deposits;

      iii.    Received $2,052,867.14 in counter deposits;

      iv.    Received daily or near daily deposits; and

      v.     Cash deposits averaged $14,000.

22. Between the approximate dates of September 4, 2019, and March 31, 2021, Company 1's BoA account:

      i.     Debited $7,641,464;

      ii.     Of that total amount, $6,766,614 was transferred to other business entities;

      iii.    Of that total amount, $1,977,546 was wired out in international wires;

      iv.    Of that total amount, $3,670,960 was wired out; and

      v.     Debits averaged $6,000.

23. A Bank of America financial representative confirmed to law enforcement that from April 2021 through July 2021, Company 1's BoA account continued to receive substantial cash deposits and make significant outgoing transfers.

24. On July 21, 2021, law enforcement executed a federal search warrant in case 21-MJ-8281 for the Residence finding probable cause for violations of money laundering under 18 U.S.C. § 1956 and unlicensed money transmission under 18 U.S.C. § 1960.

25. Pursuant to that search warrant, law enforcement seized the Defendant $11,740 in U.S. currency from the Residence.

26. One bundled stack of cash was located inside a black backpack with a Company 1 checkbook and mail addressed to Company 1.

27. The remaining bundled stacks of cash were in a speaker box located inside a dresser drawer in Individual 1's closet. They were bundles of $20 and $100 bills, rubber banded, topped

with a sticky note with calculations.

28. On July 21, 2021, law enforcement executed a federal seizure warrant in case 21-MJ-8282, for the BoA account in the name of Company 1 finding probable cause of violations of money laundering under 18 U.S.C. § 1956 and unlicensed money transmission under 18 U.S.C. § 1960.

29. Pursuant to that seizure warrant, Bank of America disbursed the contents of Company 1's BoA account in a cashier's check for $63,804.37.

30. On or about July 14, 2021, law enforcement observed Individual 3 deliver a box of purported currency to the Residence.

31. On or about July 21, 2021, Individual 1 received an offer for additional U.S. currency from Individual 3 via WhatsApp.

32. On or about July 22, 2021, Individual 3 met with Individual 1 in the driveway of the Residence. Individual 3 handed to Individual 1 a purple diaper box. Individual 3 said he/she would send Individual 1 instructions through WhatsApp, and left.

33. The purple diaper box contained the Defendant $99,980 in U.S. currency in bundled $20 bills wrapped in rubber bands.

34. The Defendant $99,980 in U.S. currency was seized by law enforcement on July 22, 2021.

35. Individual 1 had been performing foreign currency exchanges and money transmitting without a license in the U.S. or Brazil, individually and through use of his/her businesses Company 1 and Company 2, since approximately September 2019.

36. Individual 1 transferred U.S. currency in the United States for funds in Brazil, and the converse, including but not limited to:

      i.     Receiving U.S. currency and making payments in Brazil;

      ii.    Distributing U.S. currency to other people in the United States and directing them to make payments in Brazil;

      iii.   Receiving checks from accounts controlled by others; and

      iv.   Paying himself/herself a profit based on the currency exchange rate.

37. Company 1 began as a catering business, but Individual 1 used it to buy and sell U.S. currency.

38. Individual 1 met Individual 3 in a WhatsApp group for Brazilian immigrants in the United States. Individual 1 inquired how to send money to himself/herself in Brazil. Individual 1 gave Individual 3 $500 in U.S. currency and Individual 3 arranged for the equivalent to be paid to Individual 1 in Brazil. The two began to work together.

39. Individual 1 transmitted money both domestically and abroad. Some money was sent to U.S. based bank accounts. Some money was sent within Brazil. Payments in Brazil were made using Brazilian bank accounts.

40. Individual 1 received instructions by phone calls and WhatsApp messages on where to send money after receiving U.S. currency.

41. Individual 1 provided ATM cards to a co-conspirator in New Jersey, who had people deposit cash.

42. Individual 1 deposited cash and checks for money transmitting into Company 1's BoA account.

43. Individual 1 had at least a half-dozen customers who would deposit U.S. currency for funds in Brazil, or vice-versa. Individual 1 accepted customers at an office in Boca Raton, Florida, where Individual 3 had rented office space from another business. On approximately five

occasions, Individual 1 would sit with a counting machine and people would bring cash, each between approximately $70,000 to $300,000. Individual 1 would confirm to Individual 3 the amount given. Individual 3 would send confirmation of crypto currency transactions.

## IV.  BASIS FOR FORFEITURE

44. Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957, or 1960 of this title, or any property traceable to such property" is subject to forfeiture.

45. Title 18, United States Code, Section 1960 prohibits the operation of unlicensed money transmitting businesses, which are defined as a money transmitting business that:

> (A) is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable;
>
> (B) fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section; or
>
> (C) otherwise involves the transportation, or transmission of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity.

46. In the State of Florida, it is a felony criminal offense to operate a money transmitting business without a license. § 560.204, Fla. Stat.

47. Pursuant to 31 U.S.C. § 5330 and the regulations prescribed thereunder, a money transmitting business must be registered with the Secretary of the Treasury and an agent of a money transmitting business can be treated as a money transmitting business.

**CLAIM**
**Property Involved in Unlicensed Money Transmitter Business Transaction**
**(18 U.S.C. § 981(a)(1)(A))**

48. The factual allegations in paragraphs 1 through 43 are re-alleged and incorporated by reference herein.

49. As set forth above, the Defendant Assets are involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1960, or are property traceable to such property.

50. Accordingly, the Defendant Assets are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(l)(A).

**WHEREFORE**, Plaintiff, the United States of America, requests that this Honorable Court issue warrants for the arrest of the Defendant Assets; that notice of this action be provided to persons known or thought to have an interest in or right against the Defendant Assets; that the Defendant Assets be forfeited and condemned to the United States of America; and for such other and further relief as this Court may deem just, necessary and proper.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By: *s/G. Raemy Charest-Turken*
Gabrielle Raemy Charest-Turken (Fla. Bar # 15939)
Assistant United States Attorney
E-mail: Gabrielle.Charest-Turken@usdoj.gov
99 N.E. 4th Street, Suite 700
Miami, Florida 33132
Phone: (305) 961-9365

## VERIFICATION

I, Shauna Willard, hereby verify and declare, under penalty of perjury, that I am a Special Agent with Homeland Security Investigations ("HSI") and that the foregoing factual allegations are true and correct to the best of my knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent of HSI.

Executed on this 02 of December 2022.

_____
Shauna Willard
Special Agent, Homeland Security Investigations